UNITED STATES DISTRICT COURT
District of New Jersey

NOT FOR PUBLICATION

LETTER OPINION

Agnes Wladyka
Agnes Wladyka, LLC
1122 Route 22 West
Mountainside, NJ 07092

Vernon Norwood
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY  10278

    Re: <u>Kevin Bush v. Commissioner of Social Security</u>
      **Civil Action No.: 10-5780 (JLL)**

Dear Counsel:

  Presently before the Court is an appeal filed by Kevin Bush (hereinafter "Claimant") seeking review of the Administrative Law Judge's ("ALJ") decision denying his claim for Supplemental Security Income Benefits ("SSI") and Disability Insurance Benefits ("DI").  Claimant argues that the ALJ improperly evaluated the medical evidence and misinterpreted testimony by the vocational expert, and therefore her ruling should be reversed. In opposition, Defendant argues that the ALJ's finding that the Claimant is not disabled is supported by substantial evidence and should be upheld. The Court, having considered the parties' submissions, and for the reasons set for below, affirms the decision of the ALJ.

**PROCEDURAL HISTORY**

  Claimant applied for SSI and DI on September 5, 2006, claiming disability beginning on May 20, 2006. On March 8, 2007 the Social Security Commissioner denied Claimant's application. Claimant requested a hearing and appeared before ALJ Donna A. Krappa on March 19, July 30, and again on December 3, 2009 following an adjournment to update the medical evidence of record. ALJ Krappa denied Claimant's application on March 24, 2010. The Appeals Council denied Claimant's request for

review on September 11, 2010 and, in response, Claimant filed a complaint in this Court pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Claimant Kevin Bush was born on March 26, 1966.  At the time of the 2009 ALJ hearings, Claimant lived in Vauxhall, New Jersey with his elderly (now 76 year-old) mother who was  in poor health. (R. 65-66).  He completed about three years of college studies in criminal justice, but did not obtain a degree (R. 66, 204). Throughout his career he has been employed in a range of mostly unskilled positions requiring light to medium exertion. (R. 50-51). In 1996, he was laid off from his job as a morgue technician in the Essex County Medical Examiner's Office. (R. 67). In 2005, after an organizational restructuring at his dispatcher job left him unemployed, Claimant began working for a window manufacturer (R. 67-68). He left when he was injured on the job. (R. 68).  He claims he could not return to the window assembly position because stress is bad for his condition and that he experiences difficulty walking more than one and a half blocks and engaging in daily activities such as carrying groceries. (R. 68).

Claimant is 6'2-1/2" tall and reported a weight of about 290 lbs. at his December 3, 2009 hearing. (R. 34). Claimant occasionally used cocaine in the past but has not since January 2007. (R.27, 29, 76). Claimant does not drink but will have a glass of wine on special occasions such as birthdays and holidays. (R. 27, 77).  At his doctor's recommendation he has been trying to lose weight. (R. 76). His daily activities include cooking for himself and his mother, listening to the radio, and assisting with household chores including taking out the garbage. (R. 82-84). During these chores, however, he must stop frequently to rest. (R. 87). Claimant also shops for groceries, often with the help of his cousin or younger nephew. (R. 84).

Claimant reports that he can walk about one and one half blocks before experiencing shortness of breath. (R.80). He also reports that he can stand for 20-30 minute increments before he begins to lose feeling in his legs and sit for 20-30 minutes before his knees begin to bother him. (R. 80-81).  Driving everyday does not present much difficulty to Claimant as long as he drives short distances. (R.85). He claims he can lift five pounds but not carry it. (R. 81-82).

Claimant has a history of coronary artery disease, congestive heart failure, diabetes, obesity, and dyslipidemia. (R. 49, 98-101, 667). Claimant takes pills for his diabetes and monitors his blood glucose levels at least once a day. (R. 75).  This particular condition is under control and he does not have to take insulin yet. (R. 75). As of March 2009, he was also taking medicine for high blood pressure. (R. 79). Claimant's treating physician, Dr. Ramirez, diagnosed Claimant with morbid obesity. (R. 667). Board-certified medical expert witness Dr. Martin Fechner, however, testified that Claimant's obesity is moderate for an individual of his size and weight. (R. 28).

In 1997, Claimant received his first cauterization and stent for coronary artery disease. (R. 46, 75, 493). In 2000, he received his second cauterization and stent. (R. 493). Claimant sees his cardiologist, Dr. Carducci, about every other month. (R. 70-71). The record indicates, however, that Claimant has a history of noncompliance with medical treatment. (R. 269, 273).

On, May 20, 2006, the day on which he reports his disability began, Claimant was treated for a sprained right ankle at Union Hospital. (R. 253-55).  Two months later, on July 20, 2006, Claimant returned to Union Hospital with congestive heart failure. (R. 268). He remained there until July 26, 2006 when he was discharged with prescriptions for nine different medications and instructions to follow a low-sodium, low-cholesterol, and diabetic diet. (R. 271-72). Claimant returned to Union Hospital again on August 26, 2006 with shortness of breath, congestive heart failure exacerbation, and a ventricular ejection fraction of 28%. (R. 333).  Claimant explained that he was not taking the medications prescribed to him in July because he could not afford them. (R. 333).  He also admitted to using cocaine a month earlier and alcohol every other weekend (R. 346).

On Dec. 27, 2006, Claimant entered Trinitas Hospital complaining that he experienced shortness of breath for the last three months. (R. 366).  An echocardiogram revealed dilated cardiomyopathy and a left ventricular ejection fraction of 10% to 15% (R. 367).  He was released on January 4, 2007. (R. 368). A January 16, 2007 follow-up electrocardiogram (EKG) indicated potential cardiomegaly. (R. 15-16, 441). Further examinations have revealed 1+ -2+ edema in both legs. (R. 16, 441).

In summer 2008, Claimant sought hospital treatment for ankle pain caused by arthritis. (R. 78). He was kept overnight because of high blood pressure. (R. 79).  In late November 2009, Claimant underwent arthroscopic knee surgery and was about to begin physical therapy at the time of his final hearing on December 3, 2009. (R. 28). Claimant has not, however, sought treatment or emergency room admission for his congestive heart failure or hypertension since 2007. (R. 16).

At the March 3, 2009 hearing, Dr. Martin Fechner testified that Claimant "got better" (R. 46-47) and at the December 3, 2009 hearing he stated that Claimant can probably perform at sedentary functional capacity. (R. 32). Dr. Fechner stated that an individual with Claimant's cardiac history and an improved ejection fraction of 40% to 45% can perform sedentary activities such as sitting for six hours, standing or walking for two hours, and carrying ten pounds for short distances occasionally. (R. 48-50). He further testified that, in his opinion, Claimant's combination of impairments (coronary artery disease, congestive heart failure, diabetes, obesity and dyslipidemia) did not render him less than sedentary as defined by Social Security Regulations. (R. 49-50).

According to vocational expert (VE) Rocko Meola's December 3, 2009 testimony, a person with sedentary functional capacity cannot perform any of the work Claimant performed in his past jobs. (R. 51-52).  Meola did state, however, that a person with Claimant's current residual functional capacity could perform jobs such as document prep worker, cutter and paster, carding machine operator, hand mounter, and handbill sealer. (R. 52). He further testified that in northern New Jersey and the New York metro area these jobs exist in numbers of approximately 100, and in excess of 35,000 throughout the nation. (R. 35).

## LEGAL STANDARDS

To receive SSI and DI benefits under the Social Security Act, a claimant must demonstrate that he (1) is unable to engage in substantial gainful activity by reason of a physical or mental impairment that could have been expected to last for a continuous period of at least twelve months, and (2) that the existence of such impairment was demonstrated by evidence supported by medically acceptable clinical and laboratory

techniques. 42 U.S.C. §§ 423(d) and 1382c(a)(3); see also Barnhart v. Walton, 535 U.S. 212, 215 (2002). An individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(b).

The Social Security Administration uses a five-step sequential test to determine disability. 20 C.F.R. § 404.1520(a)(4). If, at any step, the Commissioner finds that a claimant is disabled or not disabled, the analysis stops and a decision is rendered. Id. If a decision cannot be made at a particular step, the analysis continues onto the next step. Id. At step one, the Commissioner considers a claimant's work activity. Id. In order to be considered disabled, a claimant has the burden of showing that he is not engaged in substantial gainful activity. Work is substantial if it involves significant physical or mental activities or a combination of both. It need not be performed on a full-time basis to qualify. "Gainful" work is work performed for pay or profit, whether or not a profit is realized.

At step two, the Commissioner evaluates the medical severity of a claimant's impairment(s), and their duration. 20 C.F.R. § 404.1520(a)(4). If they do not meet the 12-month duration requirement, a claimant is not disabled. Id. At step three, the Commissioner determines if the claimant's impairment or combination of impairments meets the severity requirements listed in 20 C.F.R. Part 404, Subpart P, Appendix 1their regulations. If the claimant cannot show that his impairments meet the severity and duration requirements, he is not disabled. 20 C.F.R. § 404.1520(a)(4). At step four, the Commissioner assesses a claimant's residual functional capacity ("RFC"), that is, claimant's maximum sustained ability to perform work activity, and his past relevant work. Id. If a claimant cannot show that he is incapable of performing past relevant work, he is not disabled. Id.

Finally, at the fifth step, the burden shifts to the Commissioner to determine if, given the claimant's RFC, age, education and work experience, he can adjust to other work. Id. The Commissioner must look at several factors including the claimant's vocational factors, his RFC, medical-vocational guidelines and vocational expert testimony. If the claimant can adjust to other work, he is not disabled. Id. If he cannot adjust, the Commissioner will find that he is disabled. Id.

A district court may review factual findings of the Social Security Commissioner to determine whether such findings are supported by the administrative record. 42 U.S.C. § 405(g). If the ALJ's decision is supported by substantial evidence, the district court must affirm it. Conklin v. Comm'r of Soc. Sec., No. 09-1450-NLH, 2010 U.S. Dist. LEXIS 65365 at *5 (D.N.J. June 30, 2010) (citing Fargnoli v. Halter, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

"Substantial evidence" is "such relevant evidence as a reasonable person might accept as adequate to support the conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, the Court's inquiry is whether the record, read in its totality, demonstrates such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ. Conklin, 2010 U.S. Dist. LEXIS 65365 at *5 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). In examining the record in its totality, the reviewing court should consider (1) objective medical facts; (2) diagnoses and medical opinions of examining

physicians; (3) subjective evidence of pain and disability as described by plaintiff and corroborated by others who have observed him; and (4) plaintiff's age, education background and work history. Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981) (citing Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972); Gold v. Secretary of HEW, 463 F.2d 38, 41 n. 2 (2d Cir. 1972)).

Where evidence is susceptible of more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  See Bryant v. Astrue, CV-10-5771(CCC) 2012 U.S. Dist. LEXIS 26675 at *12 (D.N.J. Feb. 29, 2012) (stating that a district court may not set aside an ALJ's decision merely because it would have reached a different conclusion).

### LEGAL DISCUSSION

**A. Summary of the ALJ's Findings**

The Court begins by reviewing the ALJ's application of the above five-step process. At step one, ALJ Krappa found that Claimant was not engaged in substantial gainful activity since May 20, 2006, the application date. (R. 13). At step two the ALJ concluded that Claimant's hypertension, diabetes mellitus, coronary artery disease, and obesity qualify as severe impairments as defined by 20 C.F.R. 404.1520(c) and 416.920(c). Id.

At the third step, ALJ Krappa found that Claimant does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20.C.F.R. Part 404, Subpart P, Appendix 1 (the "impairment listing"). Id.  Specifically, the ALJ found that Claimant's hypertension does not meet the requirements of § 4.0 H.1 of the impairment listing because the record does not show that the condition affected other body systems such as the heart, brain, kidneys or eyes. Id. The ALJ found that Claimant's diabetes mellitus did not satisfy the listing for endocrine impairments because it is not manifested by evidence of peripheral neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities, diabetic acidosis, or retinitis proliferans, as required by § 9.08 A.C. of the Listing. Id.  The ALJ also determined that Claimant's coronary artery impairments did not satisfy the requirements of § 4.04C of the listing because his tests did not exhibit the requisite degree of coronary narrowing "[r]esulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living." Id; 20 C.F.R. Supart P, Appendix , § 404(C)(2). Further, in accordance with SSR 03-p, ALJ Krappa addressed Claimant's obesity and found that no evidence demonstrates that obesity caused or aggravated any of Claimant's ailments. (R.17). Finally, the ALJ cited the medical expert's opinion that Claimant's impairments, both singly or in combination, do not meet the requirements of the listing of impairments. (R. 13).

Proceeding to step four, the ALJ considered the entire record and found that while Claimant cannot perform any of his past relevant work, he possesses the RFC to perform sedentary work as defined by Social Security Regulations. Id. In particular, ALJ Krappa concluded that Claimant can, inter alia, lift or carry five pounds frequently, sit for a total of six hours, sit for one hour at a time with a three to five minute stretch break, stand or walk for two hours, and perform "low stress" jobs. (R. 13-14). In reaching this conclusion, ALJ Krappa explained that she followed a two-step process in which she first determined that the Claimant exhibited underlying medically determinable physical impairments that could be shown

by medically acceptable diagnostic techniques and that could reasonably be expected to produce the Claimant's symptoms. (R. 14). Second, ALJ Krappa explained that she evaluated the intensity, persistence, and functionally limiting effects of Claimant's symptoms. Id. Although she found that Claimant's impairments could reasonably be expected to cause his alleged symptoms, the ALJ determined that the Claimant's symptoms were "not credible to the extent they are inconsistent with [his] residual functional capacity assessment." Id.

Finally, at step five, ALJ Krappa considered Claimant's age, education, work experience, and RFC, and concluded that jobs exist in the national economy that Claimant can perform. (R.18).

B. Analysis

1. **The ALJ Properly Evaluated the Medical Evidence to Determine that Claimant's Impairments and Combination of Impairments Did Not Meet the Listing Requirements.**

Claimant argues that the ALJ[1] failed to give proper consideration to his complaints concerning his shortness of breath, fatigue, insomnia, and his limited functioning caused by "uncontrolled hypertension [and] severe cardiac impairment." (Plaintiff's Brief, 16). Claimant cites to the records compiled by his treating cardiologist, Dr. Carducci, which state that Claimant's coronary artery disease was a result, inter alia, of a history of hypertension. (Id. at 16-17; R. 457-84, 491). Further, Claimant asserts that ALJ Krappa failed to properly classify Claimant's coronary artery disease as a disability, despite Dr. Carducci's description of the condition as "severe." (R. 17-18).

In reviewing an ALJ's decision, this Court has a duty to examine the "totality of evidence." Conklin at *6. In particular, it must ensure that the ALJ has "review[ed] all pertinent medical evidence and explain[ed] h[er] conciliations and rejections." Id. (quoting Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987). An ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence. See Bordes v. Comm'r of Soc. Sec. 235 Fed. Appx. 853, 864 (3d Cir. 2007). In her decision, ALJ Krappa noted that Dr. Carducci's opinions were "totally conclusory in nature and not supported by any objective clinical and diagnostic findings, functional limitations, response to treatment, or any other supporting medical documentation." (R. 17). Rather, in concluding that Claimant's combination of impairments did not rise to the level of disability for purposes of the Commissioner's Listings, the ALJ carefully evaluated Claimant's medical records, testimony, and the testimony of ME Dr. Fechner. (R. 15-17).

Based on Claimant's serial echocardiograms, the ALJ observed that Claimant demonstrated reduced left ventricular ejection fractions compatible with severely dilated cardiomyopathy. (R. 15). But upon reviewing Claimant's hospital records, chest x-ray, resting EKG, and physical examination records, ALJ Krappa noted that Claimant's 2006 hospital admissions resulted in "complete resolution" of his

---

[1] Throughout his brief Claimant refers to decisions and evaluations performed by the Commissioner. As the Social Security Commissioner takes no part in rendering decisions on SI and DI eligibility, this Court will assume that Claimant has mistakenly employed "Commissioner" as a synonym for Administrative Law Judge.

symptoms and that Claimant had not sought subsequent treatment for these conditions in three and a half years. (R. 16). Additionally, the ALJ indicated that Claimant's history of noncompliance with recommended treatment contravenes 20 CFR 404.1530, Regulation No. 4, which mandates a finding of non-disability for failure to follow prescribed treatment. Id.

Claimant also argues that the ALJ failed to address Claimant's diabetes and its potential to cause complications such as chronic kidney failure, severe coronary artery disease, and congestive heart failure. (Plaintiff's Brief, 17). At the March 3, 2009 hearing, however, Claimant himself testified that his diabetes was "under control" and that he did not have to take insulin yet. (R. 75). In her decision, ALJ Krappa also notes that on July 26, 2006, an attending physician stated that Claimant's diabetes was "controlled" and that "no subsequent medical information has altered that statement." (R. 16).

Accordingly, this Court finds that ALJ Krappa reviewed the pertinent medical evidence and adequately explained her conciliations and rejections. The record, in its totality, contains substantial evidence to support the ALJ's conclusion that Claimant's combination of impairments did not meet the level required by the Commissioner's Listings.

2. **The ALJ Properly Evaluated the Record to Determine that Claimant has the Residual Functional Capacity to Perform Sedentary Work.**

Claimant alleges that the ALJ disregarded the opinions of Claimant's treating physicians and relied on erroneous circular reasoning to determine that the Claimant possesses the RFC to perform sedentary work. (Plaintiff's Brief, 18-19). Namely, Claimant argues that ALJ Krappa relied "almost exclusively" on her "layman's opinion," and that no objective medical findings support ALJ Krappa's conclusion that Claimant could perform sedentary work. (Id. at 19-20).

To prove disability, a Claimant must show that his impairment caused functional limitations that prevented him from engaging in substantial gainful activity. Walker v. Barnhard, 172 Fed. Appx. 423, 426 (3d Cir. 2006) (citing Alexander v. Shalala, 927 F. Supp. 785, 792 (D.N.J. 1995), aff'd, 85 F. 3d 611 (3d Cir. 1996)(per curiam)). If however, a non-treating physician's medical opinion contradicts the opinion of a claimant's treating physician, the ALJ may choose to adopt the opinion of the non-treating physician as long as it is supported by evidence in the record. Marte v. Astrue, CV No.06-4325(SDW), 2008 U.S. Dist. LEXIS 43095 (D.N.J. June 2, 2008) (citing Alexander, 927 F. Supp. 785 at 795).

While the record establishes that Claimant is unable to return to his past relevant work, Claimant's own testimony reflects that he is able to engage in many regular day-to-day activities such as cooking, cleaning, taking out the garbage, driving, and walking as far as a block and half. Consistent with this testimony, Dr. Fechner testified that Claimant was physically capable of meeting the demands of sedentary work: lifting no more than ten pounds at a time, occasionally lifting or carrying small articles, and occasionally standing or walking. 20 C.F.R. § 404.1567 (defining sedentary work). In reaching this conclusion, Dr. Fechner analyzed Claimant's left ventricular ejection fraction of 40-45% and compared it to a regular ejection fraction of 55%. (R.48-50). ALJ Krappa chose to adopt Fechner's opinion as she

found it to be consistent with the preponderance of medical evidence and also lent some credibility to Claimant's cardiovascular symptoms. (R. 16-17).

Accordingly, this Court finds the record, in its totality, contains substantial evidence to support the ALJ's conclusion that Claimant maintains the residual functional capacity to perform sedentary work.

### 3. **The ALJ Properly Concluded that, Given the Claimant's Age, Education, Work Experience and RFC, Jobs Exist in the National Economy that Claimant can Perform.**

Claimant asserts that because ALJ Krappa failed to adequately evaluate the objective medical evidence of record, she did not pose hypotheticals to VE Meola that "accurately portray . . . [C]laimant's individual physical and mental limitations." (Plaintiff's Brief, 25-26). According to Claimant, the ALJ should have asked the VE to consider Claimant's specific impairments and their possible effect on his ability to perform sedentary work. (Id. at 26).

If an ALJ determines that a claimant cannot perform his past relevant work, Social Security Regulations require an ALJ, at the final step of the five-step inquiry, to consider Claimant's residual functional capacity, "together with [the claimant's] vocational factors (age, education, and work experience) to determine if [the claimant] can make an adjustment to other work." 20 CFR 404.1520(g). Notably, the Regulations do not mandate an assessment of a claimant's "individual physical and mental limitations."

At the December 3, 2009 hearing, ALJ Krappa extensively reviewed Claimant's past work experience with VE Meola. (R. 50-51). The ALJ highlighted several of Claimant's previous jobs, including microfilm tech, mortuary tech, machine operator, maintenance worker, truck loader, assembler, and dispatcher and asked the VE to classify the skill and exertion level associated with each. Id. Next, the ALJ asked the VE to consider an individual of Claimant's age, educational background and work history who can:

> "[l]ift or carry ten pounds occasionally, five pounds frequently; sit for six hours in an eight hour work day, if given the opportunity to stretch at about the hour mark for three to five minutes; stand or walk for a total of two hours in an eight hour work day; and perform unlimited pushing and pulling within the weight restrictions . . . given . . . [c]annot [sic] climb ladders, ropes or scaffolds, but can occasionally use ramps or stairs; can only occasionally balance, stoop, kneel or crouch or crawl; cannot [sic] be exposed to unprotected heights, hazards or dangerous machinery, or exposed to concentrated amounts of temperature extremes, wetness or humidity . . . [and is] also limited to low stress jobs . . .[that] require only occasional change in the work setting during the work day; and only an occasional change in decision making . . . ."

(Id. at 51-52). The VE concluded that although a person with such limitations could not perform any of Claimant's previous jobs, they could perform such jobs as document prep worker, cutter and paster, carding machine operator, hand mounter, and handbill sealer. (Id. at 52).  From there, ALJ Krappa inquired into additional physical difficulties such work could pose, including restrictions on standing and

sitting, lying down, and taking breaks (Id. 53-54). Nothing in VE Meola's responses indicated that such work would pose insurmountable difficulty to Claimant, despite his physical condition. (Id.)

Further, Claimant's attorney was given a full opportunity to examine the VE after the ALJ's inquiry. (Id. at 54-56). Although she explored, in greater depth, Claimant's hypothetical ability to sit or stand throughout the day and operate relevant tools, she did not inquire further into the impact of Claimant's so-called "individual physical and mental limitations" on the work VE Meola described. (Id. 54-56).

Accordingly, this Court finds that in considering the Claimant's RFC, age, education, and work experience, ALJ Krappa posed relevant and appropriate inquiries to the VE. As such, the record supports the ALJ's finding that jobs exist in the national economy that Claimant can perform.

## CONCLUSION

For the reasons discussed above, the ALJ's decision that Claimant was not disabled within the meaning of the Social Security Act since May 20, 2006 is supported by substantial evidence. The decision of the ALJ is hereby affirmed. An appropriate order accompanies this opinion.

DATED:  May 31, 2012

                                            s/ Jose L. Linares_____
                                            JOSE L. LINARES,
                                            UNITED STATES DISTRICT JUDGE